Thank you. Please be seated. We appreciate the indulgence. We needed to warm up for a few minutes. So our final case on this morning's docket is Hunter v. Hughes. Good morning, Your Honors. It's an honor to be here before the Ninth Circuit, and as well as it's an honor to represent the defendant appellants in this case. Could you – I don't know if the podium raises up, but you're a little far from the microphone. Can I – how about if I move it right here? Thank you. I see my clock hasn't started, so I'll start over to make sure that you heard me. You don't need to. That's fine. It's still – But my name is Kevin Holden, and it is an honor to be here. I would like to reserve four minutes for rebuttal, if that's all right. You'll have to help keep track of your time. I will do so. Okay. Your Honors, there were at least four errors that were made in the lower court that mandates that qualified immunity, in fact, should be granted to the appellants here. First, within the context of Disrochers and Connick, the court erred when it concluded that race was alleged in the three memos and based its opinion on that erroneous filing. This is simply not in the record. Two, within the context of speech made as a public employee or as John Q. Public, the court's conclusion was based on an erroneous belief that the only evidence submitted was the general order. And I think I understand why the court made that mistake. Four, the court failed to conduct an individualized inquiry, including whether or not Montoya, who was not employed when the first termination decision was made or when the termination decision was made in 2017, as well as how Rankin and Patel were not employees at all during the termination in 2017. And finally, the court improperly applied Dahlia II rather than Disrochers and Huppert. And as for the 2017 decision, the court should have relied on Hagan. That was the case to apply. Now I'd like to begin in reverse order and talk about Dahlia II. And I'd like to talk about Dahlia II within the context of the dissenting opinion of all places. As this court is well aware, the dissenting opinion, which was authored by Judge O'Scanlan, made it clear that in reversing Huppert, this was a major, major shift in how constitutional officers are to look at whether or not something is within the job duties. And I would like to quote from this because not only did Judge O'Scanlan recognize the importance of this, but Judge O'Scanlan cites to my learned colleague, Edwin Treminsky, on that very point within the dissenting opinion. And I quote, put differently, the speech at issue must not be expression on the job and within the scope of the employee's duties. If it is, there is no First Amendment protection for speech, quoting Erwin Treminsky constitutional law. The court in that dissent goes on to talk about how with its decision to discard Huppert and its newly minted quote, unquote, guiding principles for identifying protected speech, the majority reopens the doors that Garcetti slammed shut. The court goes on to say, as more of the practical, common sense analysis that was abandoned, just as Caesar's wife must be above reproach, peace officers have been held to a higher standard than other public employees because that's essential to maintain the public's confidence in its police force. And the court goes on to talk about Counsel, could I direct you to some of the facts in this case before we get too far into abstraction? As I understand it, you're challenging whether the plaintiffs spoke on a matter of public concern. That is correct. And whether they spoke in their capacity as private citizens, at least in part. Yes, Your Honor. And my question to you is whether that's an all or nothing proposition. In other words, let's say a letter from anybody says, I have two complaints. One of them is that there's graft and corruption in this department and so-and-so is taking bribes and, you know, the mayor ought to fire them. And also, I'm really unhappy about the office that I occupy because it's too cold in there and I have an uncomfortable chair. Does that letter lose its character as dealing with a matter of public concern because it also includes a personal grievance? I think that's an excellent question, Your Honor. And it's one that I think is worth looking at. Well, answer it. I'm glad you like it. And the case law makes it very clear that if the gist, if the basic message is one of a private concern to the extent that it veers off and touches on something that might have a public concern. In my example, there were two things of equal weight. What's the answer? Is that a matter of public concern because there's bribery and corruption that ought to be investigated? Or is it simply a private grievance because the employee hates her office? I think that what the courts have said is that you have to look at this on an individual basis and it would be impractical to parse out each specific comment. So you have to look at this on a case-by-case basis. And in your particular instance, you can't just look at the statement in those statements. You have to look at what's the context of this message. For example, if both things were said, but everyone agrees that the point of this communication was to get their boss off their back. Well, content is usually the most important thing, right? Yes, that is correct. So you do look at the content, but you also have to look at the context, that is, what's the point of the speech, as well as the form. But even if, in your situation where we have two comments and that's it, so you can't say this is primarily a grievance. Okay, well, let me try again with the second issue, a similar question. If an employee has a mixed letter or even a letter entirely on issues of public concern and sends it in part through their chain of command, but also to, let's say, human resources or the newspaper or someone else, what do we make of that? Does that then take it outside of a purely employment-related communication? I think the important point here is that this is not a case-by-case analysis, and you have to look at all of those factors and see which they weigh. I would submit, however, that submitting a complaint to HR, in this case, in fact, was within the chain of command. Well, there ended up being an investigation, right, but it had nothing to do with the employment situation per se, an investigation into claims of wrongdoing, correct? Yes, that's right. An investigation was made, and the individual was vindicated. But what's important here – Well, whether they were vindicated or not doesn't take away from whether it's a matter of public concern. If you accuse someone of, you know, taking bribes and mishandling their office and it turns out that you were wrong, it doesn't mean it wasn't a matter of public concern, correct? That is correct. Okay, so vindication is not relevant to the inquiry, is it? It is not relevant to the inquiry. But the case law does specifically talk about how you look to what is the basic gist of this communication, such as in the SWAT case where the dog handler – So far you have said nothing really about what happened here, and that would be the most helpful. It seemed to me that a number of the issues in the plaintiff's letters deal with matters of public concern. There are definitely some personal things. It took too long to do my evaluation and all of that. But there were allegations that evidence was returned to suspects, that a case wasn't prosecuted that should have been, that evidence was being returned in violation of Arizona law, and that there was all kinds of misconduct, that there was interference in criminal investigations and mishandling of confidential information. So it seems to me that on balance there's a lot of issues of public concern in there. What is your response to that? Well, I think there's, if I could, there's two responses to that. On the issue of whether or not this was illegal conduct, the fact that this could be considered, at least in a small way, touching on public concern, we still aren't held to qualified immunity because then we go to the second part of the analysis, and that is were these statements made as part of their official duties? And here, the evidence below was that not just that there was an order, but that Varn Robinson admitted that this was part of his duty, that Chief Ngouli admitted that, yes, you are required to make this kind of conduct. And that was, in fact, an issue that was undisputed in the court below. I would point out to the excerpts of record page 68 and 69, wherein it was admitted, according to Ngouli, any officer who believes that an officer in the department committed a crime has a duty to report such conduct, not disputed. Town Department general orders, in effect, under Chief Ngouli, indicated as a basis for discipline against an officer failing to report whose superior authority, incompetence, misconduct, neglect of duty, not disputed. Jarvis Varn Robinson understood it was his responsibility as a certified police officer to report what he believed was a crime, not disputed. Plaintiff's own expert testimony, Ronald Hergert, absolutely would have expected an officer at the police departments he worked for to report another officer if he believed they had a crime committed, not disputed. I would also invite the Court's attention to the excerpts of record 1393. And in that same citation, which was cited for that principle on Varn Robinson admitting the issue, the testimony is unequivocal that when Varn Robinson submitted his grievance, he did so at the direction of Chief Ngouli. And I quote, If you have a problem, and Ngouli said, If you have a problem, you should type up a memo and turn it in to HR. That's what I did. I did exactly what he said I should do. This was clearly, by their own admission, within the chain of command. This was clearly, as Varn Robinson goes on to say, As a peace officer in the state of Arizona, did you feel you had a duty to report what you believe was a crime, regardless of who was committing it? Oh, yes. But your understanding of your responsibility is, certified police officers, if you believe there's been a crime that's been committed, you have a duty to report it? Yes. And I did. So here, if we, one, take the facts for what they are and undisputed, that these letters do not talk about race discrimination. They simply don't. Well, that isn't necessary for them to be matters of public concern, correct? I agree. Absolutely. So the issues of public concern, all that's left would be whether or not certain crimes were committed. And if you are required to report crimes as a sworn police officer, as they have admitted, as it's undisputed, then those statements cannot be statements made by John Q. Public. They're made within your capacity as a police officer. And in making those statements as a police officer, that's not protected conduct. That's what you're being paid to do. Counsel, are you arguing that qualified immunity should also apply to the retaliation issue? Yes, Your Honor. Where did you raise that? Where did we raise the issue that— Did you raise it in the district court? Yes, Your Honor. Yes, Your Honor. We said that qualified immunity applies to the termination decisions and any other decision up to and including the termination of Detective Hunter in 2017. Where would I easily find a specific reference to the retaliation issue in the district court? I believe the district court did not address that issue. It was part of the problem. Okay. The problem is, have you preserved that issue for us to consider at this point? That's my concern. Yes, we raised that issue, Your Honor, in our appellate's brief, as well as down below, where we specifically say that Montoya, Patel, Rankin, they should be all out of this case. I see. But the district court did not rule on it? Is that your point? That is exactly right. That was one of the problems that this court has, quite frankly, and that is that the lower court did not engage in that individualized particular inquiry as to what's involved in qualified immunity. It simply missed it. It simply didn't even address those issues that we brought forward. Therefore, we can consider them on appeal. Yes, you can. I see. Your Honor, I reserve the rest of my time. You may do that. You may proceed whenever you're ready. Thank you. Good morning. May it please the Court. My name is Erwin Chemerinsky, and I represent the plaintiffs, the appellees, Walt Hunter and Jeris Verne Robinson. In 2007 and 2008, these officers filed complaints within the department that this was illegal activity. In 2010 and 2012, they went outside the chain of command, went to the town manager, the head of the Department of Human Resources, and the police chief to report what they thought was felonies with regard to tampering of evidence as to a rape case that involved a lieutenant's son, that involved a home invasion robbery case, and the murder of a child. They were then fired. The ultimate question is whether or not the firing was for their speech, and the district court properly said that that's a matter for the jury. On page 21 of the appellant's opening brief, they say that there are two issues before this court, and I agree. First, were the statements a matter of public concern? That's a question of law. Second, were the statements as public officials or were they as citizens? This court has said that's inherently a question of fact, or at least a mixed question of fact and law. As to the first question, whether these are statements of public concern, this court has long said the allegations of misconduct by government officials are inherently matters of public concern, that the conduct of police are inherently matters of public concern. Judge Graber, to address your question specifically, if there is a document that includes both personal matters and matters of public concern, this court has been clear that it should be treated as matters of public concern. This court said exactly that in Robinson v. York. Unless the discussion of matters of public concern are incidental, the documents have to be treated as matters of public concern. And if you look at the three documents that I referred to, the letter to the town manager, the letter to the Department of Human Resources, and the letter to the chief of police, the complaints of felonious conduct were not incidental. They were very core to what was being presented. And so under this court's own precedence in Robinson v. York, they should be treated as matters of public concern. This court has also been clear that the fact that it's in a letter doesn't in any way deprive it of being matters of public concern. This court said that in Thomas v. City of Beaverton. The second question that's presented is whether the statement should be regarded as public officials or as individual citizens. And here what's key is how often this court has said that that's to be treated as a question of fact or at least a question of mixed fact and law. So in Posey v. Lake Bend Orlea School District, this court said, and I quote, the scope and content of a plaintiff's job responsibilities can and should be found by the trier of fact. In Combs v. Edmond School District, an opinion by Judge O'Scanlan, it was emphasized that whether or not something is in the scope of duties is a question of fact. It requires looking at the job description. It requires looking at the practical situation. In fact, the more that opposing counsel said this has to be evaluated case by case, the more it indicates that it's a question of fact. So let me give some indication of what the facts would be here that can't be decided except ultimately by the trier of fact. Here what you have is a situation of what are the job descriptions involved? That's not part of this record. The opposing counsel wants to rely a great deal on the police requirements that there be a reported misconduct, quote, to superiors. But who counts as superiors? That's a factual question. It's also a question, going back to what was said in Combs, they would rely on the practical reality of the situation. That's a question for the trier of fact. And in light of that, the district court here was correct in denying summary judgment and saying that whether or not it's a public citizen or whether or not it's a government official is a question that should be resolved by the jury at trial, not on summary judgment. The other issues raised, John, really are incidental to this appeal. So, for example, in the reply brief, they want to say that there's the issue of whether or not the speech was disruptive of government activities. But that's inherently a question of fact, and that's something that should be decided after these two issues. The first two factors in Eng are resolved. Also in terms of whether there's a claim of race discrimination, as Judge Graber pointed out, there is a great deal that's a matter of public concern without ever getting to the issue of race discrimination. There is one statement in one of the letters where the lieutenant, Tryon, said, you can't take away all of the guns from white people, and it said that that's a basis for race, and there's also other race discrimination claims in the complaint. But again, none of that is required in order to say that these three documents contain matters of public concern. And with that, I'll ask if there's any questions otherwise. Our standard of review in this context requires us to take the facts in the light most favorable to your clients in determining whether qualified immunity applies. Is that right? Exactly, Your Honor. And the importance of this is with regard to the second issue, because what we've said here is there's a real factual dispute as to what was the chain of command here. What does it mean to say that somebody is a superior? And if you take those facts in the light most favorable to us, then it's clear that this matter should go to the jury, as the district court found. Judge Miller, do you have any questions? No, thank you. Okay, thank you. Thank you, Your Honors. If you may please, the Court. The issue of what was in the chain of command, which is really only applicable under the Dahlia II analysis, not under Huppert. Huppert was all about California law, wasn't it? Huppert was based on California law, but it stood for the general principle that if there's an order that says you're supposed to report misconduct, then your job duty means you must report misconduct. Right, but does it? I mean, specifically here, I guess the question is, does it require that you report to the town manager or the human resources department? We don't know the answer to that, do we? Here what we do know is that it is undisputed that it was appropriate to bring up an issue concern of like that to either your superior, or if your superior is the person involved, to the person above. And that's precisely what happened here. And more. The town manager and the human resources are not in. The undisputed evidence is that you exhaust and you go up and you go up. And here, the next person up was the chief of police. The next person up from that is the town manager. And according to the testimony they provided, once you exhaust to that point, you can also go to the HR, which, by the way, is all inside the workplace. None of this was outside the workplace. None of this was to town council, on Facebook. Just in closing, Your Honor, if I may. Before you do that, I just want to be sure I understand. Are you relying on Hubbard? We think that Hubbard was the correct standard to be applied in 2012. But didn't we overrule Hubbard in Dahlia II? But by that time, the decisions had already been made. So you have to look at what the law was established. Dahlia II hadn't taken effect at that point. That is absolutely correct. I see. All right. That's all my time. Qualified immunity should be applied here. Thank you. Thank you. The case just argued is submitted, and we thank both counsel for their arguments. And we are adjourned for this morning's session.
judges: O'scannlain, Graber, Miller